**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JARRETT MASON, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  5:25-cv-1406 |
| | : | |
| THE U GROUP and ALTIERI CUSTOM | : | |
| CONTRACTING AND CONSULTING, | : | |
| Defendants. | : | |

**O P I N I O N**
**Motion for Default Judgment, ECF No. 15 – Granted**

**Joseph F. Leeson, Jr.**                                                                          **June 10, 2026**
**United States District Judge**

## I.       INTRODUCTION

Plaintiff Jarrett Mason brings this action against Defendants The U Group and Altieri Custom Contracting and Consulting, alleging discrimination and retaliation. Both The U Group and Altieri Custom Contracting and Consulting failed to respond to the Complaint. The Clerk of Court entered default against both parties. Mason now moves for a default judgment against both Defendants. For the reasons that follow, the Motion for Default Judgment is granted.

## II.    BACKGROUND

Mason, an African American male, alleges that he worked for Defendants as a Home Warranty Technician from November 7, 2022, until December 7, 2022, when he was terminated. *See* Compl. ¶¶ 10, 14–15, ECF No. 1. In this position, "he was required to work with other tradesmen and perform duties as a service technician[,]" and "present to his job on a timely basis." *Id.* ¶¶ 16–17. Mason avers that Defendants' representatives (his supervisors), Brady Wilson and Vikki Cannon, "had fired multiple African American employees." *Id.* ¶¶ 18–19. Mason contends that Defendants compensated Caucasian technicians "for travel and expenses from work sites[,]" but did not do so for African American technicians. *Id.* ¶¶ 20–21. Mason maintains that he performed his job duties satisfactorily. *See id.* ¶ 22. Mason alleges that Defendants (through their "principals, directors, officers, managers, and/or employees") terminated him "for requesting that African[]American [technicians] be reimbursed like their Caucasian counterparts." *Id.* ¶¶ 23, 25.

Mason filed the Complaint on March 17, 2025, alleging discrimination and retaliation, under Title VII of the Civil Rights Act and Title 42 U.S.C. § 1981. *See* ECF No. 1. A summons was subsequently issued as to Defendants and transmitted to the United States Marshals Service for service. *See* ECF No. 3. Defendant Altieri Custom Contracting and Consulting's office manager accepted service on June 23, 2025. *See* ECF No. 5. Altieri Custom Contracting and Consulting failed to file a responsive pleading. On August 5, 2025, the Clerk of Court entered default against Altieri Custom Contracting and Consulting. *See* ECF No. 8. On September 9, 2025, this Court entered an Order ordering that Mason serve Defendant The U Group. *See* ECF No. 9. The U Group's chief executive officer accepted service on August 26, 2025. *See* ECF No. 10. The U Group never filed a responsive pleading. On September 19, 2025, the Clerk of Court entered default against The U Group. *See* ECF No. 13.

Mason filed a Motion for Default Judgment on October 24, 2025. *See* ECF No. 15. Mason provided his requested damages to this Court on December 15, 2025. *See* ECF No. 18. Mason alleges that he remained out of work for two months until he obtained a new job at Lowe's, earning approximately $14 per hour. *See id.* Mason made $20 per hour in his position with Defendants. *See id.* Mason seeks reimbursement for travel related work expenses ($500); loss of earnings for two months; loss of $6.00 per hour upon accepting a position at Lowe's; attorney's fees and costs; interest, and other related filing expenses. *See id.*

Mason filed an affidavit of his requested damages on May 28, 2026. *See* ECF No. 22. He alleged that, following his termination, he remained unemployed for two months, totaling lost wages of approximately $5,600. *See id.* at 2. He also alleged that he lost $300 in unreimbursed travel expenses and $400 for tools and supplies that he purchased for work purposes. *See id.* He also alleges that he was employed with Lowe's for approximately two months. *See id.* He attached his W-2 forms from Lowe's showing that he worked there for two months. *See* ECF No. 22-1.

Also on May 28, 2026, Mason's counsel submitted an affidavit of attorney's fees. *See* ECF No. 23. Mason's counsel sought $3,250 in attorney's fees, at a rate of $500 per hour. *See id.* These comprise numerous client meetings and preparing documents for the case. Mason's counsel also submitted an exhibit providing that "[t]he costs associated with [Mason's] representation[,]" including service and the filing fee, total $1,359.40. *Id.*

## III.    LEGAL STANDARDS

### A.  Motion for Default Judgment – Review of Applicable Law

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when a default has been entered by the Clerk of Court.  *See* Fed. R. Civ. P. 55(b)(2); *see also Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922

F.2d 168, 177 n.9 (3d Cir. 1990). "It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Court considers three factors in determining whether to enter default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions[.]" *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017). Because "a party in default does not admit mere conclusions of law[,]" the district court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action,'" before granting default judgment. *Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 541 (E.D. Pa. May 21, 2008) (citation omitted).

**B. Discrimination – Review of Applicable Law**

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015). Disparate treatment claims brought under Title VII and the ADEA are analyzed using the three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). "Under the *McDonnell Douglas* paradigm, an employee must first establish a prima facie case of discrimination, after which the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). The Third Circuit Court of Appeals has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an

employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *Id.* "It is important to note that although the burden of production may shift during the *McDonnell Douglas* inquiry, the ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (explaining that once the plaintiff establishes a prima facie case, the law creates a "presumption" of unlawful discrimination, which is rebutted if the employer articulates a legitimate nondiscriminatory explanation for the employer's action, but the "presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the ultimate burden of persuasion").

> To establish a *prima facie* case of employment discrimination, a plaintiff must show that:
>
> (1) he is a member of a protected class;
> (2) he was qualified for the position in question;
> (3) he suffered an adverse employment action; and
> (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.

*McDonnell Douglas Corp.*, 411 U.S. at 802; *see also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "The central focus in a discrimination case is "whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15. (1977)).

### C.  Retaliation – Review of Applicable Law

To establish a *prima facie* case of retaliation under Title VII, the ADA, and/or the PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Boykins v. SEPTA*, No. 17-1980, 2018 WL 460652, at *2, *6 (3d Cir. 2018) (analyzing claims under Title VII and the PHRA the same).

Pursuant to the first element, a report to a superior may constitute protected activity where discrimination is specifically alleged in the verbal or written report. *See LeBlanc v. Hill Sch.*, No. 14-1675, 2015 WL 144135, at *14 (E.D. Pa. Jan. 12, 2015) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)); *see also Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (stating that the employee must have a good faith, reasonable belief that the activity complained of is unlawful (citing *Clark Cnty v. Breeden*, 532 U.S. 268, 271 (2001))).

As to the second element, a plaintiff must show that "a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore*, 461 F.3d at 341 (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . . . The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).

Under the third element, a plaintiff must show a causal connection between the protected activity and the retaliatory act. *See Moore,* 461 F.3d at 341–42. In determining causation, courts often look to the "temporal proximity between the protected activity and the alleged discrimination" and "the existence of a pattern of antagonism in the intervening period." *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)) (internal quotation marks omitted), *overruled on other grounds by Burlington Northern*, 548 U.S. 53. Since there is no single, definite way of showing causation, the court must look at the evidence "as a whole" to determine if retaliation has been sufficiently pled. *Jensen*, 435 F3d at 450 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000)). However, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016) (explaining that "a prima facie case is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim" (internal quotations and citations omitted)). "Instead of requiring a *prima facie* case, the post-*Twombly* pleading standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted).

## IV.    ANALYSIS

### A. Cause of Action

Mason brings claims under Title VII and Section 1981. The Court finds Mason's allegations sufficient to states claims under both Title VII and Section 1981[1].

---

[1]    Section 1981 claims alleging race discrimination are analyzed pursuant to the same standard as Title VII claims. *See, e.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999); *Manning v. Temple Univ.*, 157 F. App'x 509, 513 (3d Cir. 2005).

First, Mason plausibly pleads a race discrimination claim. He alleges that he is African American, he was fired within one month of starting employment, and Defendants did not reimburse him for travel and expenses, while doing so for Caucasian technicians. He also alleges that once he requested that African American technicians be reimbursed like Caucasian technicians, he was terminated. *See* Compl. ¶¶ 14–23. At this early stage of the case, the Court finds Mason states a discrimination claim.

Second, Mason plausibly pleads a retaliation claim. He alleges that he requested Defendants' "principals, directors, officers, managers, and/or employees" that African American technicians (like himself) be reimbursed for travel to and from work sites and was fired soon after. *See* Compl. ¶¶ 20–23, 25. Mason plausibly pleads causation in the form of temporal proximity because he requested expense reimbursement, noted it was about the discriminatory treatment, and was terminated likely within days because he worked for Defendants for approximately one month. *See* Compl. ¶¶ 14, 23; *see also Rosati v. Colello*, 94 F. Supp. 3d 704, 717 (E.D. Pa. 2015) (providing that to establish causation for a Title VII retaliation claim on temporal proximity alone, "[d]ays are suggestive; months are not" and that "the timing of an alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred"). The allegations satisfy the Court that Mason has "a legitimate cause of action" for Title VII retaliation. *Sowell v. RAV Investigative & Sec. Servs., Ltd.*, No. 15-3657, 2016 WL 3014881, at *3 (E.D. Pa. May 26, 2016) (citing *DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998).

### B. Damages

Mason requests damages for the reimbursement for travel-related work expenses, approximately $500; loss of earnings for two months, totaling $5,600; and loss of $6.00 per hour upon accepting a lower-paying position of employment with Lowe's for two months. *See* ECF No. 22. His counsel also requests attorney's fees. *See* ECF No. 23.

"The equitable remedies available to a prevailing plaintiff in a Title VII . . . action include the awards of back pay and front pay." *Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *14 (E.D. Pa. Sept. 2, 2015). The Court must be satisfied that the calculation of damages is correct. *See Russell v. Mimi's Cafe & Mkt.*, No. 21-3826, 2023 WL 158210, at *4 (E.D. Pa. Jan. 11, 2023). The Court may rely on affidavits or other evidentiary materials or may conduct an evidentiary hearing to determine the amount of damages. *See* Fed. R. Civ. P. 55(b)(2)(B); *cf.* Fed. R. Civ. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."). The standard for determining damages at the default judgment stage is reasonableness based on all the evidence and affidavits submitted by the moving party. *See generally J & J Sports Prods., Inc. v. Roach*, No. 07-5059, 2008 WL 8901291 (E.D. Pa. July 8, 2008). Front pay, an alternative to reinstatement, is a remedy that the "courts may award [ ] where a victim of employment discrimination will experience a loss of future earnings because [ ]he cannot be placed in the position [ ]he was unlawfully denied." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 86 (3d Cir. 2009) (citations omitted). The award of front pay is discretionary. *See id.* at 87.

The Court finds that Mason's request for $300 in travel expenses, $400 for tools and supplies, and $5,600 in lost wages for two months is reasonable, since Mason plausibly pleads causes of action under Title VII and Section 1981, and the damages are easily ascertainable from the Complaint and the subsequent affidavits. *See Roach*, 2008 WL 8901291; *see also Fonovisa, Inc. v. Merino*, No. 06-3538, 2006 WL 3437563, at *3 (D.N.J. Nov. 27, 2006) (awarding requested damages because the plaintiff requested the minimum damages permitted by statute and the complaint reflected such damages).

The Court approximates Mason's loss of earnings for the two months he worked at Lowe's and made $14 an hour, $6 per hour less than he made working for Defendants. For two months (approximately eight weeks), Mason calculated his lost wages as $5,600. Ostensibly, this appears to be thirty-five hours of work per week for the approximately eight weeks that he did not work. Additionally, the W-2s provided show that Mason made $3,272.18 while working at Lowe's. Subtracting this amount from $5,600 (the amount of lost wages for approximately the same amount of time) is $2,327.82. The Court finds $2,327.82 to be a reasonable estimate of damages for the loss of $6 per hour while Mason worked for Lowe's.

Considering the allegations in Mason's Complaint, which the Court accepts as true, the Court finds that Mason's total damages are $8,627.82, which are reasonable under the circumstances. *See Morgan v. RCL Mgmt., LLC*, No. 18-800, 2020 WL 3429444, at *1 (E.D. Pa. June 23, 2020) ("The plaintiff bears the burden of proving that they are entitled to recover damages and must substantiate the amount, such as through affidavits or other appropriate evidence" (citing *Punter v. Jasmin Int'l Corp.*, No. 12-7828, 2014 WL 4854446, at *3 (D.N.J. Sept. 30, 2014))); *see also Zurich Am. Ins. Co. of Illinois v. Sunshine Trucking, LLC*, No. 20-4481, 2021 WL 860413, at *3 (E.D. Pa. Mar. 8, 2021) (finding damages were reasonable following review of an affidavit);

*Russell*, 2023 WL 158210, at \*4 (finding that an affidavit, along with testimony at an evidentiary hearing, credibly established the amount of damages requested). Thus, the Court awards Mason $8,627.82.

### C. Attorney's Fees

Mason also requests attorney's fees and costs. In an employment discrimination action, the court has discretion to award reasonable attorney's fees to the prevailing party. *See* 42 U.S.C. § 2000e–5(k); *see also Russell*, 2023 WL 158210, at \*4 (awarding attorney's fees as reasonable based upon the allegations in the complaint). In this case, the Court awards Mason a default judgment, thus he is the prevailing party in his Title VII and Section 1981 action. In his affidavit, Mason's counsel seeks $3,250 in attorney's fees, at a rate of $500 per hour, for 6.5 hours total. *See* ECF No. 23. This time involves client meetings and document preparation from March 2025 through May 2026. *See id.* Mason's counsel also submitted an affidavit providing that "[t]he costs associated with [Mason's] representation[,]" including service and the filing fee, total $1,359.40. *Id.* Thus, the attorney's fees requested total $4,609.40. The Court finds these fees to be reasonable in the circumstances, based upon the allegations in Mason's Complaint and in his counsel's affidavit. *See Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 869 (Pa. Super. Ct. 2019) (holding that a $600 hourly rate for attorney's fees was reasonable based upon the record and the attorney's experience and prior fee awards in similar cases); *see also Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 978 (Pa. Super. Ct. 2011) ("[T]he determination of a reasonable fee is an inherently case-specific endeavor."); *Harrison v. Host Marriott Corp.*, No. 97–5925, 1997 WL 792902, at \*3 (E.D. Pa. Dec.19, 1997) (finding that a court may order a defendant to reimburse a plaintiff for the expenses the plaintiff incurred in prosecuting a motion for default judgment). Thus, the Court awards Mason's counsel $4,609.40 in attorney's fees.

## V.    CONCLUSION

Mason's Complaint plausibly states claims for relief under both Section 1981 and Title VII. Therefore, the Court grants the Motion for Default Judgment and awards Mason $8,627.82 in damages and $4,609.40 in attorney's fees, as requested.

A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge